**KIMBERLY S. TRIMBLE**
California State Bar No. 288682
**FEDERAL DEFENDERS OF SAN DIEGO, INC.**
225 Broadway, Suite 900
San Diego, California 92101-5030
Telephone: (619) 234-8467
Facsimile: (619) 687-2666
Kimberly_Trimble@fd.org

Attorneys for Mr. Jaime Tovar-Duran

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>JAIME TOVAR-DURAN,<br>Defendant. | CASE NO.: 19-mj-24405-BLM<br><br>Hon. Barbara Lynn Major<br>Date: January 9, 2020<br>Time: 9:30 a.m.<br><br>Mr. Tovar-Duran's Motions to Dismiss, Empanel a Jury, Suppress Evidence, and Order Discovery |

## I. Motions to Dismiss

### A. This Court should dismiss the charging document because Congress violated the non-delegation doctrine when it enacted 8 U.S.C. § 1325(a)(1).

Under 8 U.S.C. § 1325(a)(1), Congress has made it a crime for any "alien" to "enter[] or attempt[] to enter the United States at any time or place other than as designated by immigration officers[.]" Congress, then, made it a crime for a non-citizen to enter, or attempt to enter, the United States during a time or at a place that any immigration officer, including any Border Patrol agent, has not designated for entry. That means whether a defendant's conduct amounts to a crime depends on what an executive-branch official has designated. Congress, then, has delegated to the executive branch the ability to define a criminal provision's scope.

This violates the non-delegation doctrine because Congress has delegated to an executive-branch official the ability to determine the scope of a criminal

provision without providing the executive branch official with "an intelligible principle" to guide the official's discretion. *See Mistretta v. United States*, 488 U.S. 361, 372 (1989) (internal quotation marks omitted). As a result, Congress violated the non-delegation doctrine when it enacted § 1325(a)(1).This Court, then, must dismiss this case.

### B. This Court should dismiss the charging document because Congress violated the Due Process Clause's prohibition on vague laws when it enacted 8 U.S.C. § 1325(a)(1).

The government violates the Fifth Amendment's Due Process Clause "by taking way someone's life, liberty, or property" based on a "vague" criminal law. *Johnson v. United States*, 135 S. Ct. 2551, 2556 (2015). "A statute can be impermissibly vague for either of two independent reasons." *Hill v. Colorado*, 530 U.S. 703, 732 (2000). First, a statute is impermissibly vague if it "fails to give ordinary people fair notice of conduct it punishes[.]" *Johnson*, 135 S. Ct. at 2556. Second, a statute is impermissibly vague if it "authorizes or even encourages arbitrary and discriminatory enforcement." *Hill*, 530 U.S. at 732. Here, § 1325(a)(1) flunks these requirements. As explained above, the scheme Congress and executive-branch officials created in § 1325(a)(1) allows an immigration officer to decide what places and times to designate for entry. An immigration officer can decide what to designate for any reason or no reason at all. This Court, then, must dismiss this case.

### C. This Court should dismiss the charging document because this prosecution violates equal protection and due process.

The Court should dismiss the information because this prosecution violates equal protection and due process. Misdemeanor illegal entry under 8 U.S.C. § 1325 is the *only* petty offense that prosecutors in the Southern District of California do not bring through the Central Violations Bureau ("CVB"). CVB defendants are generally cited and released, receive notice of their court date in the mail, and resolve their charges without a criminal conviction. By contrast, § 1325 defendants

are arrested, held in custody, never offered an alternative to a conviction, and always serve some jail time—even though § 1325 defendants have a *lower* failure-to-appear rate than CVB defendants. This disparate treatment violates equal protection on the basis of alienage, national origin, and race.

This Court can also adjudicate this equal protection claim through the lens of selective prosecution or selective enforcement. The requirements for selective prosecution are met because the U.S. Attorney's disparate treatment of CVB and § 1325 defendants has a discriminatory effect and a discriminatory purpose. The Border Patrol's referral of § 1325 defendants for prosecution in "regular" court, rather than CVB court, also demonstrates a "policy, plan, or a pervasive pattern" that constitutes selective enforcement. *See Thomas v. County of Los Angeles*, 978 F.2d 504, 509 (9th Cir. 1993).

Furthermore, this prosecution violates procedural and substantive due process. The three-factor procedural due process test in *Mathews v. Eldridge*, 424 U.S. 319 (1976), weighs in favor of dismissal, because the interest in avoiding a loss of liberty and a conviction are substantial, the risk of an erroneous deprivation of these interests is virtually guaranteed, and any costs or administrative burden on the Government are minimal. Finally, substantive due process has been violated because it shocks the conscience to deprive § 1325 defendants of the substantial benefits of CVB court while extending those benefits to other defendants charged with petty offenses who have an even greater risk of flight.

**D. This Court should dismiss the charging document because 8 U.S.C. § 1325 violates the due process clause.**

The offense of 8 U.S.C. § 1325 makes it a crime for "any alien" to enter or attempt to enter the United States outside a port of entry. Congress defined the term "alien" as "any person not a citizen or national of the United States." 8 U.S.C. § 1101(a)(3). In *Sessions v. Morales-Santana*, 137 S. Ct. 1678, 1686, 1700–01 (2017), the Supreme Court held that the statutes transmitting citizenship to children

born abroad violate equal protection under the Fifth Amendment's Due Process Clause—they treat children of unwed mothers and unwed fathers differently. Because the citizenship laws create an unconstitutional exception that favors unwed mothers over unwed fathers, and the offense charged rests on these invalid statutes, the offense itself is unconstitutional. Thus, this Court must dismiss the charging document.

**E. This Court should dismiss because the charging document fails to allege all the elements of the charged offense.**

A charging document must include the "essential facts constituting the offense charged[.]" FED. R. CRIM. P. 7(c)(1). That is, a charging document "must set forth each element of the crime that it charges." *Almendarez-Torres v. United States*, 523 U.S. 224, 228 (1998). A charging document "that tracks the words of the statute violated is generally sufficient" to allege the elements of an offense. *United States v. Jackson*, 72 F.3d 1370, 1380 (9th Cir. 1995). But "implied, necessary elements, not present in the statutory language, must be included in an indictment." *Id*. Thus, if a "statute is silent on *mens rea*," the government must allege the *mens rea* in the charging document. *United States v. Morrison*, 536 F.2d 286, 288 (9th Cir. 1976). If a charging document fails "to recite an essential element of the charged offense," that is a "fatal flaw requiring dismissal." *United States v. Omer*, 395 F.3d 1087, 1088 (9th Cir. 2005) (internal quotation marks omitted).

Here, the government charged a violation of the attempt portion of § 1325(a)(1). Its charging document, however, is deficient because it fails to contain the implied *mens rea* for the attempt portion of § 1325(a)(1). Specifically, the charging document fails to allege "the specific intent to enter the country free from official restraint." *United States v. Vazquez-Hernandez*, 849 F.3d 1219, 1225 (9th Cir. 2017) (internal quotation marks omitted). Second, the charging document fails to allege knowledge of alienage. This was required under *Rehaif v. United States*, 139 S. Ct. 2191, 2195–97 (2019). And it was required because the offense

is charged as an attempt crime. *See States v. Quijada*, 588 F.2d 1253, 1255 (9th Cir. 1978); Wechsler, Jones & Korn, *The Treatment of Incohate Crimes in the Model Penal Code of the American Law Institution: Attempt, Solicitation, and Conspiracy*, 61 COLUM. L. REV. 571, 579 (1961). Thus, the charging document fails to allege the elements of the charged offense, and this Court must therefore dismiss it.

## II. If this Court does not dismiss, it must empanel a jury to adjudicate the case.

The Sixth Amendment guarantees a defendant charged with a "serious offense" the right to a jury trial. *Duncan v. Louisiana*, 391 U.S. 145, 157-58 (1968). By contrast, a defendant charged with a "petty" offense (rather than a serious one) may be tried by a judge without violating the Sixth Amendment. *Bado v. United States*, 186 A.3d 1243, 1248–49 (D.C. 2018) (en banc).

Here, the government has alleged a serious offense—8 U.S.C. § 1325. It is a serious offense because a conviction would substantially impair the ability to seek asylum and thus result in removal. *See Bado*, 186 A.3d at 1243 (holding that an offense that would result in a defendant's removal qualifies as a "serious offense" and thus triggering a right to a jury trial). A § 1325 conviction could have this impact because U.S. Citizenship and Immigration Services in July 2018 advised that asylum officers may find that "an applicant's illegal entry . . . including any conviction for illegal entry where the alien does not demonstrate good cause for the illegal entry" will "weigh against a favorable exercise of discretion." See USCIS, *Guidance for Processing Reasonable Fear, Credible Fear, Asylum, and Refugee Claims in Accordance with Matter of A-B.* Later, the Attorney General implemented a new regulation making asylum unavailable to aliens who seek refuge in the United States if they entered the country outside a port. *E. Bay Sanctuary Covenant v. Trump*, 909 F.3d 1219, 1230 (9th Cir. 2018) (citing *Aliens Subject to a Bar on Entry Under Certain Presidential Proclamations; Procedures for Protection Claims*, 83 Fed. Reg. 55,934 (Nov. 9, 2018)). Although the Ninth Circuit has temporarily

enjoined this regulation, *see id.*, the government continues to challenge that ruling on appeal.

Thus, because a § 1325 conviction has the potential to serve as both a discretionary and regulatory bar to a potentially life-saving grant of asylum, it is a "serious" offense meriting a jury trial. *See Bado*, 186 A.3d at 1243.

## III. Motions to Suppress

### A. This Court should suppress statements.

According to discovery provided by the government, Mr. Tovar-Duran made several statements to agents. Prior to introducing these statements at trial, the government must first prove that it complied with *Miranda*, and, second, that the statements were voluntary. *Miranda v. Arizona*, 384 U.S. 436 (1966); *Arizona v. Fulminante*, 499 U.S. 279, 288 (1991). The government has a heavy burden to demonstrate that the defendant intelligently and voluntarily waived his privilege against self-incrimination. *Miranda*, 384 U.S. at 475. The Court must indulge every reasonable presumption against waiver of fundamental constitutional rights, so the burden on the government is great. *United States v. Heldt*, 745 F.2d 1275, 1277 (9th Cir. 1984). The proper remedy for a *Miranda* violation is the suppression of the tainted statement. *Chavez v. Martinez*, 538 U.S. 760, 772 (2003).

#### 1. <u>Mr. Tovar's field statements should be suppressed because he did not receive *Miranda* warnings and because they were involuntary.</u>

*Miranda* warnings are necessary when a person is in custody and interrogated. *Rhode Island v. Innis*, 446 U.S. 291, 297 (1980). The Court must look to objective factors when determining whether the accused was in custody. *Stansbury v. California*, 511 U.S. 318, 324 (1994). The Ninth Circuit has applied the objective factors test from *Stansbury* to include the language used by the officers, the physical characteristics of the place where the question occurs, the degree of pressure applied to detain the individual, the duration of the detention, and the extent to which the person was confronted with evidence of guilt. *United*

*States v. Butler*, 249 F.3d 1094, 1099 (9th Cir. 2001).

A reasonable person would not feel free to leave when confronted by a Border Patrol Agent who was asking him questions. For that reason, Mr. Tovar-Duran was in custody when the arresting agent arrived and identified himself as an agent. The agent asked Mr. Tovar-Duran his country of citizenship, which was likely to elicit an incriminating response given that the agent who arrested Mr. Tovar-Duran was asking the questions to determine whether he could arrest him for illegal entry. Because he did not precede these questions by advising Mr. Tovar-Duran of his *Miranda* rights, Mr. Tovar-Duran's responses must be suppressed.

These statements must also be suppressed as involuntary given the circumstances of this encounter. This encounter appears to have occurred in an isolated area where such an interaction with a law enforcement officer would be intimidating. If this Court is not willing to grant this motion to suppress on this record, Mr. Tovar-Duran asks for an evidentiary hearing.

2. Mr. Tovar-Duran's statements during the post-arrest interrogation should also be suppressed because they were involuntary.

At the time of the post-arrest interrogation, he was being held at a Border Patrol station. Discovery provided by the government indicates that Mr. Tovar-Duran was arrested at 11:49 p.m. His post-arrest interrogation began nearly six hours later, at 5:38 a.m. This delay between the arrest and interrogation had a coercive effect. Under these circumstances, the government cannot prove that these statements were voluntary, and they must be suppressed.

At minimum, any statements made after the time mark of 05:43:57 on the government's recording must be suppressed because the recording provided to defense counsel cuts off at that time.

**B. This Court should suppress evidence of prior removals.**

The government has provided discovery indicating that Mr. Tovar-Duran has been ordered removed. Any evidence of a prior removal should be suppressed for

trial, consistent with Due Process. “A defendant charged with illegal reentry under 8 U.S.C. § 1326 has a Fifth Amendment right to collaterally attack his removal order because the removal order serves as a predicate element of his conviction.” *United States v. Ubaldo-Figueroa*, 364 F.3d 1042, 1047 (9th Cir. 2004). Similarly, Mr. Tovar-Duran should have an opportunity to collaterally attack any removal order that will be used to satisfy an element of this illegal entry offense. But because the government has not provided Mr. Tovar-Duran’s full immigration record, he is unable to challenge the lawfulness of the removal order. Thus, any evidence of a prior removal should be suppressed.

## IV. Motions for Discovery

Mr. Tovar-Duran moves for the production of the following discovery. This request is not limited to those items that the prosecutor know of, but rather includes all discovery listed below that is in the custody, control, care, or knowledge of any "closely related investigative [or other] agencies." *See United States v. Bryan*, 868 F.2d 1032 (9th Cir. 1989).

### A. The Defendant’s Statements.

The government must disclose to the defendant all copies of any written or recorded statements made by the defendant; the substance of any statements made by the defendant which the government intends to offer in evidence at trial; any response by the defendant to interrogation; the substance of any oral statements which the government intends to introduce at trial and any written summaries of the defendant’s oral statements contained in the handwritten notes of the government agent; any response to any *Miranda* warnings which may have been given to the defendant; as well as any other statements by the defendant. Fed. R. Crim. P. 16(a)(1)(A) and 16(a)(1)(B). The Advisory Committee Notes and the 1991 amendments to Rule 16 make clear that the Government must reveal all the defendant’s statements, whether oral or written, regardless of whether the government intends to make any use of those statements. See also United States v.

Bailleaux, 685 F.2d 1105, 1113-1114 (9th Cir. 1982).

**B. Arrest Reports, Notes and Dispatch Tapes.**

Defendant also specifically requests the government to turn over all arrest reports, notes, dispatch or any other tapes, and TECS records that relate to the circumstances surrounding the defendant's arrest and any questioning. This request includes, but is not limited to, any rough notes, records, reports, transcripts or other documents in which statements of the defendant or any other discoverable material is contained. Such material is discoverable under Fed. R. Crim. P. 16(a)(1)(A), Fed. R. Crim. P. 16(a)(1)(B), and *Brady v. Maryland*, 373 U.S. 83 (1963). The government must produce arrest reports, investigator's notes, memos from arresting officers, dispatch tapes, sworn statements, and prosecution reports pertaining to the defendant. See Fed. R. Crim. P. 16(a)(1)(E); Fed. R. Crim. P. 26.2; *United States v. Riley*, 189 F.3d 802, 806-808 (9th Cir. 1999). Preservation of rough notes is requested, whether or not the government deems them discoverable.

**C. *Brady* Material.**

The defendant requests all documents, statements, agents' reports, and tangible evidence favorable to the defendant on the issue of guilt and/or which affects the credibility of the government's case. Under *Brady*, impeachment as well as exculpatory evidence falls within the definition of evidence favorable to the accused. *United States v. Bagley*, 473 U.S. 667 (1985); *United States v. Agurs*, 427 U.S. 97 (1976).

**D. Any Proposed 404(b) Evidence.**

To the extent that there is any such evidence, the government must produce evidence of prior similar acts under Fed. R. Evid. 404(b) and "shall provide reasonable notice in advance of trial . . . of the general nature" of any evidence the government proposes to introduce under Fed. R. Evid. 404(b) at trial. See United States v. Vega, 188 F. 3d 1150, 1154-1155 (9th Cir. 1999). The defendant requests that such notice be given three weeks before trial in order to give the defense time

to adequately investigate and prepare for trial.

**E. Evidence Seized.**

The defendant requests production of evidence seized as a result of any search, either warrantless or with a warrant. Fed. R. Crim. P. 16(a)(1)(D).

**F. Request for Preservation of Evidence.**

The defense specifically requests that all dispatch tapes or any other physical evidence that may be destroyed, lost, or otherwise put out of the possession, custody or care of the government and which relate to the arrest or the events leading to the arrest in this case be preserved.

**G. Henthorn Material.**

The defendant requests that the Assistant United States Attorney ("AUSA") assigned to this case oversee (not personally conduct) a review of all personnel files of each agent involved in the present case, and produce to him any exculpatory information and impeachment material at least two weeks prior to trial and one week prior to the motion hearing. *See Kyles v. Whitley*, 514 U.S. 437, 438 (1995) (holding that "the individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police"); *United States v. Henthorn*, 931 F.2d 29 (9th Cir. 1991); *see also United States v. Jennings*, 960 F.2d 1488 (9th Cir. 1992) (AUSA may not be ordered to personally conduct examination of records; appropriate government agency may review files and notify AUSA of contents as long as AUSA makes the determination regarding material to be disclosed); *United States v. Herring*, 83 F.3d 1120 (9th Cir. 1996) (accord). This request particularly includes a request to compel discovery from the government concerning the nature and extent of any involvement that the agents testifying in this case may have had in the "I'm 10-15" or "The Real CBP Nation" Facebook groups. The defense specifically requests disclosure of whether testifying agents were members of either of these Facebook groups, whether they posted to these groups, whether they commented on or

"reacted" to the posts of others, the content any such posts, comments, or reactions, and whether any disciplinary action was taken by U.S. Customs and Border Patrol as a result of the agents' membership or activity in these groups. If it is found that they were a member of the group, Mr. Tovar-Duran requests disclosure of all of the FB content pertaining to the agent who was a member of the group including all if his/her posts, comments, reactions to posts (such as "likes" of a post). If it is found that they are under investigation or disciplinary action was taken by U.S. Customs and Border Patrol as a result of their activity or membership in the group, Mr. Tovar-Duran requests all records, reports, and information pertaining to those investigations. In addition, Mr. Tovar-Duran requests that if the government is uncertain whether certain information is to be turned over pursuant to this request, that it produce such information to the Court in advance of the trial and the motion hearing for an in camera inspection.

**H. Jencks Act Material.**

The defendant requests production in advance of trial of all material, including dispatch tapes, which the government must produce pursuant to the Jencks Act, 18 U.S.C. § 3500 and Fed. R. Crim. P. 26.2. Advance production will avoid the possibility of delay at trial to allow the defendant to investigate the Jencks material. A verbal acknowledgment that "rough" notes constitute an accurate account of the witness' interview is sufficient for the report or notes to qualify as a statement under section 3500(e)(1). *Campbell v. United States*, 373 U.S. 487, 490-92 (1963). In *United States v. Boshell*, 952 F.2d 1101 (9th Cir. 1991) the Ninth Circuit held that when an agent goes over interview notes with the subject of the interview the notes are then subject to the Jencks Act. *See also United States v. Riley*, 189 F.3d 802, 806-808 (9th Cir. 1999). Defendant requests pre-trial disclosure of such statements to avoid unnecessary recesses and delays for defense counsel to properly use any Jencks statements and prepare for cross-examination.

**I. Giglio Information & Agreements Between the Government and Witnesses.**

Pursuant to *Giglio v. United States*, 405 U.S. 150 (1972), the defendant requests all statements and/or promises, express or implied, made to any witness, in exchange for their testimony in this case, and all other information which could be used for impeachment.

**J. Residual Request.**

The defendant intends by this discovery motion to invoke his rights to discovery to the fullest extent possible under the Federal Rules of Criminal Procedure and the Constitution and laws of the United States. The defendant requests that the government provide his and his attorney with the above requested material sufficiently in advance of trial to avoid unnecessary delay prior to cross-examination.

Respectfully submitted,

Dated: December 19, 2019

*s/ Kimberly S. Trimble*

Federal Defenders of San Diego, Inc.
Attorneys for Mr. Jaime Tovar-Duran
Email: Kimberly_Trimble@fd.org