UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                     Plaintiff,<br><br>v.<br><br>JAIME TOVAR-DURAN,<br><br>                  Defendants. | Case No.:  19-mj-24405-BLM-GPC<br><br>**ORDER AFFIRMING MAGISTRATE JUDGE DECISION**<br><br>**[ECF No. 26]** |

Jaime Tovar-Duran was convicted of attempted improper entry under 8 U.S.C. § 1325(a)(1) in a bench trial before a magistrate judge.  ECF No. 24.  He timely appealed the conviction to this Court, ECF No. 26; Fed. R. Crim. P. 58 (g)(2)(B), which has jurisdiction to review the magistrate's decision pursuant to 18 U.S.C. § 3402.  Tovar-Duran filed an Opening Brief, the Government responded with an Answering Brief, and Tovar-Duran filed a Reply Brief.  ECF Nos. 45, 49-50.  The Court finds the matter is appropriate for decision on the papers and hereby VACATES the hearing previously scheduled for April 5, 2024.

The Court AFFIRMS Tovar-Duran's conviction.

# BACKGROUND

A U.S. Border Patrol Agent, Clinton Copenhaver, arrested Tovar-Duran on November 15, 2019.  ECF No. 30 at 20.[1]  At around midnight, after following footprints in the mountains for about one hour, Agent Copenhaver found three men a little over a mile north of the U.S.-Mexico border and a little less than a mile from the nearest port of entry.  ECF No. 30 at 10, 13, 15, 17, 24.  There were no homes or businesses nearby, *id.* at 23-24, and the men were sitting in "thick vegetation [on] really steep terrain."  *Id.* at 15.  One of the men was Tovar-Duran.  *Id.* at 15-16.  According to Agent Copenhaver, Tovar-Duran was wearing a camouflage shirt and shoes that were "soiled and covered in brush."  *Id*. at 24.

Agent Copenhaver identified himself in English and Spanish, handcuffed the men, and conducted an immigration inspection.  *Id*. at 17-18.  Tovar-Duran responded that "he was from Mexico, that he did not have papers to enter legally, and that he had crossed illegally."  *Id*. at 19.  The Agent then arrested the men, walked them to his vehicle, and brought them to the Brown Field Border Patrol Station.  *Id.* at 19-20, 24.

Approximately six hours after arriving at the station and roughly eight hours after Tovar-Duran was taken into custody in the field, a different agent, Agent George Artiles, interrogated Tovar-Duran at the station.  *Id.* at 26, 28; ECF No. 45 at 35.  Agent Artiles, a fluent Spanish speaker, testified that he gave Tovar-Duran "each and every," "complete" *Miranda* warning and that Tovar-Duran acknowledged understanding each warning.  ECF No. 30 at 29-30.  But Agent Artiles did not say which warnings he gave or what specifically he said.  *Id.*  He also testified that Tovar-Duran agreed to speak to him without a lawyer present.  *Id.* at 30.  During the interview, Tovar-Duran stated that he was a citizen of Mexico, did not have permission to enter the U.S., and that he had

---

[1] Page numbers reflect CM/ECF pagination.

entered through the mountains, which he knew was illegal.  *Id*. at 31-33.  A few days later, on November 18, 2019, Tovar-Duran was charged with Improper Attempted Entry (misdemeanor) pursuant to 8 U.S.C. § 1325(a)(1).  ECF No. 1 at 1.

Prior to trial, the defense requested discovery "concerning the nature and extent of any involvement that the agents testifying in this case may have had in the 'I'm 10-15' . . . Facebook group[]," including the content of their activity in the group.  ECF No. 14 at 10-11.  "I'm 10-15" was a Facebook group for Border Patrol employees that prompted internal and congressional investigations due to its content: jokes about sexual assault and the death of migrants and the use of racist and misogynist memes and slurs.  *Inside the Secret Border Patrol Facebook Group Where Agents Joke About Migrant Deaths and Post Sexist Memes*, ProPublica (July 1, 2019), https://www.propublica.org/article/secret-border-patrol-facebook-group-agents-joke-about-migrant-deaths-post-sexist-memes.  The request was denied as moot at a motion hearing because the government reported that their understanding was that neither of the likely witnesses in the case were part of the group.  ECF No. 38 at 15.  However, shortly before trial, the government notified defense counsel that two of their witnesses had been members of the "I'm 10-15" Facebook group but that the witnesses did not recall posting or liking anything in the group.  ECF No. 30 at 3-4.  The government did not say which two of their three witnesses were part of the group.  The defense renewed their request for this discovery, and the magistrate judge denied it.  *Id.* at 4.

The government also filed a motion in limine, requesting admission of Tovar-Duran's A-File documents, specifically warrants of removal and related warnings to noncitizen removed, from November 11, 2019 and from March 14, 2016.  ECF No. 17 at 2.  This evidence was admitted at the start of trial—over objections on the basis of relevance, hearsay, and failure to comply with notice requirements for propensity evidence—as a self-authenticating document that fell under the hearsay exceptions for public and business records.  ECF No. 30 at 7-9.

At trial, in addition to the A-File, the government presented the testimony of Agents Copenhaver and Artiles, as well as that of Agent Ivan Hernandez. *Id.* at 39. Agent Hernandez testified that his searches of Border Patrol's electronic databases showed no evidence of applications for permission to enter the U.S. and that Tovar-Duran was removable. ECF No. 30 at 40-45.

At the end of a brief trial on February 19, 2020, the magistrate judge issued an oral decision finding Tovar-Duran guilty of improper entry. ECF No. 30 at 56. Tovar-Duran timely appealed to this Court. ECF No. 26.

## STANDARD OF REVIEW

A district court's review of a magistrate judge decision has the same scope as the court of appeals' review of a district court. Fed. R. Crim. P. 58(g)(2)(D) ("The defendant is not entitled to a trial de novo by a district judge."). The Court reviews the magistrate judge's legal conclusions de novo, *United States v. Biotronik, Inc.*, 876 F.3d 1011, 1016 (9th Cir. 2017), and its findings of fact for clear error, *United States v. Brobst*, 558 F.3d 982, 998 (9th Cir. 2009).

## DISCUSSION

Tovar-Duran challenges his conviction for improper entry on multiple grounds: (1) the magistrate judge abused her discretion by denying the defense's request for discovery of material regarding the witnesses' "I'm 10-15" Facebook group membership; (2) the magistrate judge abused her discretion by admitting the A-File documents because they were inadmissible hearsay, were not properly authenticated, and were improper propensity evidence; (3) Agent Artiles's station interview should have been suppressed because the government did not meet their burden to show that adequate *Miranda* warnings were given or that Tovar-Duran validly waived his *Miranda* rights; and (4) the magistrate judge clearly erred by finding that Tovar-Duran's admissions were corroborated.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**I.   The magistrate judge abused her discretion by denying Tovar-Duran's request for material on the "I'm 10-15" Facebook membership of two witnesses, but the error was harmless.**

### a.  Denial of the Discovery Request

Tovar-Duran contends that the magistrate erred by denying the request for disclosure of witnesses' membership and activity in the "I'm 10-15" Facebook.  ECF No. 45 at 8, 19.  The Court reviews the magistrate judge's decision to deny the discovery request for an abuse of discretion, and whether there was a *Brady* violation de novo. *United States v. Stever*, 603 F.3d 747, 752 (9th Cir. 2010).

Both *Brady v. Maryland*, 373 U.S. 83 (1963) and Federal Rule of Criminal Procedure ("Rule") 16 require the government to disclose certain information and provide certain documents to the defense that are in the prosecutor's possession.  Rule 16 mandates that the government turn over material documents within its control.  Fed. R. Crim. P. 16(a)(1)(E)(i).  Materiality is a fairly low threshold that is satisfied as long as the information "would have helped" the defendant prepare their defense. *United States v. Hernandez-Meza*, 720 F.3d 760, 768 (9th Cir. 2013) (citation omitted). *Brady* requires the government to disclose evidence that is exculpatory as to guilt or punishment or can serve as impeachment. *Milke v. Ryan*, 711 F.3d 998, 1012 (9th Cir. 2013).  For both *Brady* and Rule 16, documents are in the government's possession if the prosecutor could have learned of the information from their subordinates or if the prosecutor knew of and had access to the information at other executive branch agencies. *United States v. Cano*, 934 F.3d 1002, 1023 (9th Cir. 2019).  There cannot be a *Brady* violation without a post hoc showing that the suppression of evidence prejudiced the defendant. *Milke*, 711 F.3d at 1012.

Here, Tovar-Duran argues that both *Brady* and Rule 16 required the government to disclose which Border Patrol witnesses had been part of the "I'm 10-15" group and to provide documentation of those witnesses' activity in the group, and that the magistrate

5

erred by denying this discovery request.  ECF No. 45 at 16-20.  "I'm 10-15" was a Facebook Group in which Border Patrol agents joked about sexual assault and migrant deaths, shared deeply offensive memes and images, and used racist and misogynistic slurs.  ECF No. 45 at 10 n.1 (citing *Inside the Secret Border Patrol Facebook Group Where Agents Joke About Migrant Deaths and Post Sexist Memes*, ProPublica (July 1, 2019), https://www.propublica.org/article/secret-border-patrol-facebook-group-agents-joke-about-migrant-deaths-post-sexist-memes).  The content shared was so egregious that it prompted Congressional and internal investigations and media attention.  *See After a Year of Investigation, the Border Patrol Has Little to Say About Agents' Misogynistic and Racist Facebook Group*, ProPublica (Aug. 5, 2020), https://www.propublica.org/article/after-a-year-of-investigation-the-border-patrol-has-little-to-say-about-agents-misogynistic-and-racist-facebook-group; *United States v. Bernal-Sanchez*, No. 21-50276, 2023 WL 7179469, at *1 (9th Cir. Nov. 1, 2023) (referencing thousands of open investigations related to the group).

Activity in "I'm 10-15" could be strong evidence of bias against immigrants, and a number of district courts in this Circuit have required the government to disclose "I'm 10-15" membership and produce the witness's activity in the group.  *See, e.g.*, *United States v. Morales-Roblero*, No. 3:19-MJ-24442, 2020 WL 5517594, at *6 (S.D. Cal. Sept. 14, 2020); *United States v. Jeronimo-Pablo*, No. 3:20-MJ-20066, 2020 WL 4500628, at *8 (S.D. Cal. Aug. 5, 2020).  Evidence that a Border Patrol witness participated in the group certainly is material under Rule 16's low bar in that it would have helped Tovar-Duran prepare a defense, at least as to that witness's testimony.  *See Hernandez-Meza*, 720 F.3d at 768.  And it is evidence Tovar-Duran could have used to impeach the witness's credibility, making it *Brady* material.  *See Milke*, 711 F.3d at 1012.

Here, in the motion to compel discovery, defense counsel specifically requested: discovery . . . concerning the nature and extent of any involvement that the agents testifying in this case may have had in the 'I'm 10-15' or 'The Real

CBP Nation' Facebook groups.  The defense specifically requests disclosure of whether testifying agents were members of either of these Facebook groups, whether they posted to these groups, whether they commented on or 'reacted' to the posts of others, the content [of] any such posts, comments, or reactions, and whether any disciplinary action was taken by U.S. Customs and Border Patrol as a result of the agents' membership or activity in these groups.

ECF No. 14 at 10-11.  At the motion hearing, the government attorney reported that "I've spoken to both . . . [of the] likely witnesses in this case, and it's my understanding neither of them were a part of those groups."  ECF No. 38 at 15.  The judge held that this resolved the defense's request.  *Id.*  However, at trial, the defense counsel renewed her request for discovery on the "I'm 10-15" group because the government had since informed the defense that two of the three witnesses were members of the group.  ECF No. 30 at 3-4.  According to the government, the officers who were part of the group, "did not recall posting anything [and] did not recall any specific posts that they liked."  *Id.* at 4.  Seemingly as a result, the magistrate denied the motion for additional discovery.  *Id.*

The Court holds that this denial was an abuse of discretion.  That the government reported that the agents did not like or comment on any of the posts and that the government asserted in their Answering Brief that the witnesses' *Henthorn* checks—for officer disciplinary issues in their personnel files, *United States v. Henthorn*, 931 F.2d 29, 30-31 (9th Cir. 1991)—came back clean, did not satisfy the government's disclosure obligations.  ECF No. 49 at 2-3.  First, the government failed to disclose which of the three testifying agents had been part of the group and which had not.  ECF No. 50 at 8.  Second, the government's information was based on the agent's own reports.  ECF No. 30 at 4; ECF No. 49 at 2 ("Both witnesses denied involvement in any problematic posts.  Neither witness remembered posting anything or 'liking' anything specific about any post.

19-mj-24405-BLM-GPC

Further, defense counsel was informed that neither agent had access to the Facebook group anymore.").  The Ninth Circuit has previously found in an unpublished disposition that it was error to rely upon the witness's word regarding their activity in the "I'm 10-15" group and that to meet its disclosure obligations the government needed to search for the witness's activity itself.  *United States v. Bernal-Sanchez*, No. 21-50276, 2023 WL 7179469, at *1 (9th Cir. Nov. 1, 2023).

*Bernal-Sanchez* held that the trial judge's denial of the defense's discovery request for "I'm 10-15" activity was an abuse of discretion and explained:

> it is . . . undisputed that the government did not search for or produce [the witness's] "I'm 10-15" activity and simply relied on the fact that no disciplinary action related to the Facebook group was in his personnel file. The government and the magistrate judge also erroneously relied upon [the witness's] representation that he did not participate in the group.  Nothing in the record establishes that the investigations into all Border Patrol agents' Facebook group activities had been completed or that all "I'm 10-15" disciplinary actions had been recorded in each agent's files.  Further, due to the racist, violent, and degrading nature of the comments on the "I'm 10-15" group pages and because [the witness] denied posting, liking, or commenting on the group, any activity by [the witness] would have impeached [his] statement that he had not contributed to the group pages.

*Bernal-Sanchez*, 2023 WL 7179469, at *1.  Like in *Bernal-Sanchez*, the witnesses here reportedly denied commenting or liking any content in the group.  ECF No. 30 at 4; ECF No. 49 at 2.  Thus, the production of *any* activity in the "I'm 10-15" group would have impeached them.

The government's argument that it produced all the information it possessed and that Tovar-Duran was simply speculating that the witnesses were more involved in the group than they said they were, ECF No. 49 at 3, repeats the arguments made by the government in *Bernal-Sanchez*, Answering Brief for the United States at 39-40, *Bernal-Sanchez*, 2023 WL 7179469 (9th Cir. 2023); ECF No. 50 at 6-7, and fails for the reasons described in the Ninth Circuit's decision

1   quoted above.  The government's attempt to distinguish *Bernal-Sanchez* because it

2   mentioned open internal investigations into individual officers, ECF No. 49 at 3-4,

3   is also unavailing because whether there were active investigations does not affect

4   the government's obligation to search for information related to the particular

5   witnesses in a case.  Thus, the denial of the discovery request was an abuse of

6   discretion.

7   **b.  Prejudice**

8   Nonetheless, the Court holds that remand is inappropriate because there is no

9   prejudice to the defense.  A discovery violation causes prejudice if there is a "likelihood

10  that the verdict would have been different had the documents been disclosed." *United*

11  *States v. Doe*, 705 F.3d 1134, 1152 (9th Cir. 2013).  Prejudice for *Brady* purposes exists

12  if the undisclosed documents "undermine [the Court's] confidence in the outcome and

13  [create] a 'reasonable probability' of a different result."  *Id.* at 1152-53.

14  According to the government's Answering Brief, Agent Artiles, who conducted the

15  station interview, and Agent Hernandez, who testified about the electronic databases,

16  were members of the "I'm 10-15" Facebook group.  ECF No. 49 at 5.  Discounting their

17  testimony does not undermine the outcome, let alone present a reasonable probability or

18  likelihood of a different outcome.  Officer Copenhaver, who questioned and arrested

19  Tovar-Duran in the field, was not part of the "I'm 10-15" group.  *See* ECF No. 49 at 5.

20  He testified that he followed fresh footprints in the mountain for about an hour and at

21  about midnight found Tovar-Duran and two others sitting in thick, high vegetation on a

22  steep mountainside.  ECF No. 30 at 15-17, 23.  Tovar-Duran was wearing a camouflage

23  shirt and his shoes were soiled and covered in brush.  *Id.* at 24.  The area was a little over

24  a mile north of the international border with no houses or businesses nearby.  *Id.* at 23-24.

25  Most importantly, Officer Copenhaver testified that upon his questioning, Tovar-Duran

26  stated he was a citizen of Mexico, that he did not have papers to enter legally, and that he

27  had crossed illegally.  *Id.* at 18-19.

28

1    Thus, even without the other agents' testimony, there is evidence that Tovar-Duran

2  admitted that he had entered improperly, did not have permission to enter the United

3  States, and that he was a Mexican citizen. As described below in the corpus delicti

4  discussion, these admissions are sufficiently corroborated by the circumstances of his

5  discovery and his prior warrants of removal, which were admitted without a witness as

6  self-authenticating documents, ECF No. 30 at 5-9, and which corroborate his alienage

7  and specific intent to enter outside a port of entry free from official restraint.

8    In *Bernal-Sanchez*, the Ninth Circuit vacated the improper entry conviction and

9  remanded for in camera review of the witness's "I'm 10-15" materials, finding that it was

10  impossible to determine the impact of the unknown discovery where the magistrate judge

11  had relied on the tainted witness's testimony in their decision.  *Bernal-Sanchez*, 2023 WL

12  7179469, at *1.  Tovar-Duran advocates for the same result here, arguing that the Court

13  cannot assess prejudice without seeing the information the government failed to disclose.

14  ECF No. 45 at 20.  But here, even if the tainted witnesses had not testified at all, there is

15  Tovar-Duran's immigration inspection statements and corroborating evidence sufficient

16  to support the conviction.  *See United States v. Miller*, 953 F.3d 1095, 1107 (9th Cir.

17  2020) (affirming the district court's denial of a motion for a new trial because the

18  undisclosed evidence "would have served as impeachment evidence at most, and even if

19  the jury had deeply discounted [the witness's] testimony, we are convinced that they still

20  would have convicted [the defendant].").

21    As such, even though the magistrate judge abused her discretion by denying the

22  request for discovery of the "I'm 10-15" Facebook group activity, the Court declines to

23  remand because Tovar-Duran's conviction for improper entry stands even without the

24  testimony from Agents Artiles and Hernandez.

25  **II.    The warrants of removal were properly admitted.**

26    Tovar-Duran next challenges the admission of his A-File documents, the warrants

27  of removal and related warnings to noncitizen ordered removed from November 11, 2019

28

1    and from March 14, 2016.  ECF No. 45-1 at 6-11.  Although Tovar-Duran structures the

2    argument in two sections, he essentially makes three challenges: (1) the statements in the

3    documents regarding alienage were inadmissible hearsay; (2) the documents were not

4    properly authenticated; and (3) the warrants were improper propensity evidence.  ECF

5    No. 45 at 3.

###     a.  The statements regarding alienage in the warrants of removal were not
###         inadmissible hearsay.

6
7
8        Tovar-Duran contends that the statements of his alienage in the warrants of

9    removal were inadmissible hearsay, and that the magistrate judge should not have relied

10   on them in finding alienage.  ECF No. 45 at 21; 8 U.S.C. § 1325(a)(1).  Because the

11   defense objected to the admission of the A-File documents on hearsay grounds at trial,

12   ECF No. 30 at 5, the Court reviews the magistrate judge's evidentiary ruling for an abuse

13   of discretion.  *Unicolors, Inc. v. H&M Hennes & Mauritz, L.P.*, 52 F.4th 1054, 1063 (9th

14   Cir. 2022).

15       The Ninth Circuit has explicitly held that "deportation documents are admissible to

16   prove alienage under the public records exception to the hearsay rule."  *United States v.*

17   *Hernandez-Herrera*, 273 F.3d 1213, 1217 (9th Cir. 2001); *United States v. Contreras*, 63

18   F.3d 852, 857 (9th Cir. 1995) ("The I-205 form [a Warrant of Removal/Deportation] is

19   hearsay, but is admissible under the public records exception to the hearsay rule.");

20   *United States v. Faulk*, 478 F. App'x 464 (9th Cir. 2012) ("Warrants of removal are

21   admissible under the public records hearsay exception, and we've permitted their use as

22   proof of alienage." ); *see also United States v. Rapeta-Garcia*, 171 F. App'x 562, 565

23   (9th Cir. 2006) ("[W]e held that admission of documents in an . . . 'A-file' were

24   admissible by the government to prove alienage under the public records exception to the

25   hearsay rule."). These cases control the Court's decision.

26       Tovar-Duran highlights a single district court case which questioned this

27   proposition and held that warrants of removal were inadmissible hearsay as to alienage.

28

*United States v. Terraza-Palma*, 890 F. Supp. 2d 1251, 1253 (C.D. Cal. 2012); ECF No. 45 at 21-22.  Given the Ninth Circuit precedent governing the issue, a single district court decision fails to persuade the Court.  Ultimately, the magistrate judge did not abuse her discretion in holding that Tovar-Duran's warrants of removal, including the statements regarding alienage, were admissible under the public records hearsay exception.[2]  As such, the magistrate judge was entitled to rely on the statements regarding alienage in the A-File documents.

### b.  The warrants of removal were self-authenticating.

Tovar-Duran also challenges the admission of the warrants of removal on the ground that they were not properly authenticated.  ECF No. 45 at 23.  The A-File documents were admitted at the start of trial as self-authenticating, without a witness, under Federal Rule of Evidence ("FRE") 902(4).  ECF No. 30 at 5-9.  Because the defense did not object as to authentication, the Court reviews the magistrate judge's decision regarding authentication for plain error.  *See United States v. Orm Hieng*, 679 F.3d 1131, 1135 (9th Cir. 2012).  Under the plain error standard, the Court may reverse only if the error was obvious, affected the outcome of the proceedings, and seriously

---

[2] The Ninth Circuit has clarified that A-File documents, such as a warrant of removal, cannot alone establish alienage.  *United States v. Sotelo*, 109 F.3d 1446, 1449 (9th Cir. 1997); *Hernandez-Herrera*, 273 F.3d at 1218.  To the extent Tovar-Duran argues that the magistrate judge relied entirely on the warrants of removal to establish alienage, the Court rejects this argument as a mischaracterization of the magistrate judge's decision. *See* ECF No. 30 at 9 ("I find that the [A-File] documents aren't conclusive, they're just evidence, and I will certainly consider your arguments against the weight that should be given to them, but I do find that they're admissible."); ECF No. 30 at 57 ("I find that the A file records *further* support his statement that he is not a citizen of the United States and does not have a legal right to enter the United States." (emphasis added)).

1  affects the "fairness, integrity, or public reputation of judicial proceedings." *Id.* at 1135-

2  36 (citation omitted).

3      FRE 902(4) explains in relevant part that certified copies of public records are self-

4  authenticating "if the copy is certified as correct by . . . a certificate that complies with

5  Rule 902(1)[.]" Fed. R. Evid. 902(4)(B).  FRE 902(1) in turn prescribes that domestic

6  public documents are self-authenticating if the document bears "a seal purporting to be

7  that of the United States . . . or a department, agency, or officer of [the United States] . . .

8  and a signature purporting to be an execution or attestation." Fed. R. Evid. 902(1).

9      Here, the warrants of removal were admitted along with a letter and certification

10 from U.S. Citizenship and Immigration Services ("USCIS").  ECF No. 45-1 at 4-5.  The

11 letter explains that the documents were provided in response to a request "for Certified

12 True Copies from" USCIS relating to Jaime Tovar Duran and listing his A number.  *Id.* at

13 5.  The letter is signed by Michael Hartsfield, Records Supervisory Management

14 Specialist.  *Id.*  The "Certification of Documents," USCIS Form G-24, is also signed by

15 Michael Hartsfield, Supervisory Records Management Specialist in the USCIS Records

16 Department.  *Id.* at 4.  It states that he "certif[ies] that the annexed documents are

17 originals, or copies therefore, from the records of the U.S. Citizenship and Immigration

18 Service, Department of Homeland Security[.]"  *Id.*  The copy of the certification in the

19 Record includes a faint seal below the signature that appears to show an eagle with

20 outstretched wings ringed by a circle of text.  *Id.*  The text is unclear.  *Id.*

21     Under the plain error standard, this certification complies with FRE 902(1) as

22 required by FRE 902(4) to admit a copy of a public record.  Michael Hartsfield's

23 signature and title are "a signature purporting to be an execution or attestation." Fed. R.

24 Evid. 902(1).  And while the details of the seal are difficult to make out on the copy in

25 the record, the magistrate judge did not commit obvious error affecting the fairness,

26 integrity, or public reputation of judicial proceedings by determining that the certification

27 included a seal of a United States agency.  *Id.*  What the Court can make out of the seal

28

matches the appearance of the seal of the U.S. Department of Homeland Security ("DHS"), and the Court would not expect a raised seal to come through clearly in a copy anyway.  *See* ECF No. 30 at 5 (noting that the document has a raised seal).

Tovar-Duran makes two arguments, both of which the Court finds unpersuasive. First, Tovar-Duran relies heavily on an unpublished Ninth Circuit case, *Flores v. Sessions*, 684 F. App'x 603 (9th Cir. 2017), seemingly to argue that the text and signature on the certification were insufficient.  ECF No. 45 at 25.  However, *Flores* did not involve the authentication of public records under FRE 902.  Instead, it reviewed an administrative immigration decision, in which the Federal Rules of Evidence do not apply, *see Hernandez v. Garland*, 52 F.4th 757, 766 (9th Cir. 2022), and held that the document was insufficiently authenticated under the due process clause pursuant to an immigration regulation.  684 F. App'x at 604-05.  Moreover, the letter at issue in *Flores* did not include a seal and was not even on DHS letterhead.  *Id.* at 605 n.2.  Here, a seal was present and the certification was an official USCIS form.  *See* ECF No. 45-1 at 4.  As such, *Flores* is not relevant to the Court's analysis.

Second, Tovar-Duran contends that the "photocopy of the seal in this case is so faint as to be illegible," and that when the seal is not visible, the document cannot be admitted as self-authenticating under FRE 902(1).  ECF No. 45 at 26-27.  The Court agrees with the proposition that when the seal is not visible the document cannot be admitted under FRE 902(1).  *See United States v. Estrada-Eliverio*, 583 F.3d 669, 671 (9th Cir. 2009).  However, here, the seal is clearly visible and visible in enough detail that it appears to match the DHS seal.  That all the details of the seal are not reflected on the copy in the record does not demonstrate that the magistrate judge plainly erred.

Thus, the Court holds that it was not plain error to admit the warrants of removal as self-authenticating documents.

1

### c.  The warrants of removal were not improper propensity evidence under FRE 404(b).

2

3      Tovar-Duran also argues that the trial judge erred by admitting the warrants of

4 removal as propensity evidence without satisfying the requirements of FRE 404(b)(2).[3]

5 ECF No. 45 at 33.  Where an objection is made on the record, the Court reviews the

6 magistrate judge's evidentiary rulings for an abuse of discretion, but when there is no

7 objection, the Court reviews for plain error.  *United States v. Orm Hieng*, 679 F.3d 1131,

8 1135 (9th Cir. 2012).   Here, the defense arguably failed to preserve the issue by

9 objecting specifically to the government's failure to meet 404(b) notice requirements, not

10 to the general admission of 404(b) propensity evidence.  ECF No. 30 at 8.  The Court

11 does not determine which standard of review applies because it finds that the argument

12 fails under both.

13      Although prior bad act evidence is not admissible to prove defendant's "character

14 in order to show that on a particular occasion the [defendant] acted in accordance with

15 the character," it is admissible for other purposes, such as to prove motive, intent,

16 knowledge, and absence of mistake.  Fed. R. Evid. 404(b)(1)-(2).  To show that prior bad

17 acts evidence is probative of something other than criminal propensity, the government

18 must show that: "(1) the evidence tends to prove a material point (materiality); (2) the

19 other act is not too remote in time (recency); (3) the evidence is sufficient to support a

20

21

_____

22 [3] Tovar-Duran titles the relevant section of his brief: "The warrants of removal were not
properly noticed under 404(b)."  ECF No. 45 at 29.  Nonetheless, he appears to contest

23 whether the warrants fall under a permitted use of propensity evidence, not whether they
were properly noticed.  *Id.* at 29-33.  A challenge to the notice requirement would be

24 unsuccessful anyway as the government filed a motion in limine weeks in advance of trial
requesting admission of the A-File documents to "establish Defendant's identity,

25 corroborate his alienage, establish his specific intent to enter at a non-designated port of
entry, and to establish his specific intent to enter free from official restraint."  ECF No.

26 17 at 1-2.

27

28

1    finding that defendant committed the other act (sufficiency); and (4) the act is similar to

2    the offense charged (similarity)."  *United States v. Charley*, 1 F.4th 637, 647 (9th Cir.

3    2021) (cleaned up).

4         Here, it was not an abuse of discretion to determine that the warrants of removal

5    tended to prove a material point without relying on propensity reasoning.  The

6    government explained at trial that the A-File documents supported Tovar-Duran's

7    alienage and "his knowledge that he was not to reenter the United States and that he was

8    coming into the United States unlawfully."  ECF No. 30 at 8.  Similarly, in its closing, the

9    government argued that according to the warrant of removal, Tovar-Duran "was removed

10   three days before this happened, so it's clear that the defendant knows he can't come

11   back to the United States, but he did it anyway, and that's why he snuck back into the

12   United States."  ECF No. 17 at 2.  Tovar-Duran tries to frame this as impermissibly

13   arguing that "because Mr. Tovar-Duran had been caught and deported previously after

14   entering the United States, he did so again."  ECF No. 45 at 30.  The Court disagrees.

15        That Tovar-Duran had been removed and received a warning stating that he was

16   "prohibited from entering, attempting to enter, or being in the United States . . . [f]or a

17   period of 20 years" a few days before the incident at issue is relevant to whether he

18   crossed into the U.S. with specific intent to enter outside a port of entry free from official

19   restraint—without relying on the proposition that he entered improperly before and

20   therefore must have done so again.  The prior removal demonstrates knowledge that he

21   was not permitted to enter the U.S. and suggests motive to enter outside a port of entry

22   free from official restraint.  At the very least the magistrate judge did not abuse her

23   discretion in concluding as such.  ECF No. 30 at 9.  The warrants of removal also support

24   a finding of Tovar-Duran's alienage (though not conclusively).  The A-File documents

25   were therefore material.

26        The prior removals were also very recent: only a few days and three years before

27   the incident at issue.  ECF No. 45-1 at 6 (removal on Nov. 11, 2019); ECF No. 45-1 at 9

28

(removal on March 14, 2016); ECF No. 1 at 1 (incident on Nov. 15, 2019).  And given that Tovar-Duran's name and A number are on the documents, ECF No. 45-1 at 5-11, the magistrate judge did not abuse her discretion in determining that the warrants showed that Tovar-Duran had indeed been previously removed.  *See United States v. Johnson*, 132 F.3d 1279, 1283 (9th Cir. 1997) ("This reliability threshold is not a high one[.]").

Finally, it was not an abuse of discretion to find that evidence of prior removals was sufficiently similar to this incident even if the form of Tovar-Duran's prior entry was not clear on the record.  As the Ninth Circuit has explained, the degree of similarity required depends on the non-propensity theory being employed.  *See United States v. Arambula-Ruiz*, 987 F.2d 599, 603 (9th Cir. 1993).  "Indeed, when offered to prove knowledge, the prior act need not be similar to the charged act as long as the prior act was one which would tend to make the existence of the defendant's knowledge more probable than it would be without the evidence."  *United States v. Vo*, 413 F.3d 1010, 1018 (9th Cir. 2005) (cleaned up).  Here, that Tovar-Duran had previously been removed and warned not to return to the U.S. is sufficiently similar to the crime of improper entry to indicate knowledge that he was entering illegally, provide motive to enter outside a port of entry, and to indicate he is a noncitizen.

The Court also notes that documents in a noncitizen's A-File, including evidence of prior removals, are routinely admitted in prosecutions for improper entry under 8 U.S.C. § 1325(a)(1).  *See, e.g.*, *United States v. Covarrubias*, No. 318CR00099, 2020 WL 1170216, at *2 (D. Nev. Mar. 11, 2020) (denying a 404(b) challenge to the admission of A-File documents and explaining "[the defendant's] assertion that A-file documents are inadmissible is undone by a wealth of Ninth Circuit caselaw allowing the admission of such documents"); *United States v. Lucas-Hernandez*, No. 19-MJ-24522, 2022 WL 1556161, at *2 (S.D. Cal. May 17, 2022).

Accordingly, the Court concludes that the magistrate judge did not abuse her discretion by admitting the warrants of removal under FRE 404(b).

### III.   Any *Miranda* violations were harmless.

Tovar-Duran challenges the admission of his statements to Agent Artiles at the Brown Field Border Patrol Station, in which he admitted to being a Mexican citizen, to not having permission to enter the U.S., that he had entered through the "mountains," and that he knew that it was illegal to enter that way.  ECF No. 45 at 33-35; ECF No. 30 at 31-33.  Tovar-Duran contends that the government failed to meet its burden to show both that adequate *Miranda* warnings were given and to show that Tovar-Duran validly waived his *Miranda* rights.  ECF No. 45 at 33-35.

Even if there was a *Miranda* violation and the station interview should have been suppressed, the error was harmless beyond a reasonable doubt.  *See United States v. Butler*, 249 F.3d 1094, 1098 (9th Cir. 2001) ("The admission of statements made in violation of a person's *Miranda* rights is reviewed for harmless error."); *Chapman v. California*, 386 U.S. 18, 24 (1967) ("[B]efore a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt.").  In determining that remand was not necessary for the discovery violation *supra*, the Court has already concluded that Tovar-Duran's field statements, the circumstances of his arrest, and his A-File were sufficient to convict him of improper entry beyond a reasonable doubt.  There is therefore no need to consider the merits of Tovar-Duran's *Miranda* challenges.

### IV.   The government sufficiently corroborated Tovar-Duran's admission regarding alienage.

To convict for improper entry, the government must prove that Tovar-Duran was not a citizen of the U.S., i.e. alienage.  8 U.S.C. § 1325.  In response to Agent Copenhaver's field questioning, Tovar-Duran admitted his alienage directly—that he was a citizen of Mexico.  ECF No. 30 at 19.  Tovar-Duran challenges that the government did

19-mj-24405-BLM-GPC

not corroborate this admission sufficiently for it to support his conviction under the doctrine of corpus delicti.[4]  ECF No. 45 at 36-39.

Under the corpus delicti doctrine, a defendant's admission requires corroborating evidence to support a conviction.  *United States v. Lopez-Alvarez*, 970 F.2d 583, 589 (9th Cir. 1992).  "To satisfy the corroboration requirement, the Government must introduce independent evidence tending to establish the trustworthiness of the admission, unless the confession is, by virtue of a special circumstances, inherently reliable."  *United States v. Hernandez*, 105 F.3d 1330, 1332 (9th Cir. 1997) (citation and internal quotation marks omitted).  The doctrine "does not require the government to introduce evidence that would be independently sufficient to convict the defendant in the absence of the confession.  Rather, it requires evidence sufficient to corroborate the defendant's confession."  *United States v. Valdez-Novoa*, 780 F.3d 906, 923 (9th Cir. 2015).  "[C]orpus delicti does not impose a high bar for the government to clear."  *United States v. Gonzalez-Godinez*, 89 F.4th 1205, 1210 (9th Cir. 2024).  The Court reviews corroboration for clear error.  *Id.* at 1208.

Agent Copenhaver, an independent source, testified that he found Tovar-Duran in the middle of the night sitting in thick, high vegetation on a mountainside a little over a mile north of the U.S.-Mexico border.  ECF No. 30 at 15, 17.  Tovar-Duran's shoes were soiled and covered in brush and he was wearing a camouflage shirt.  *Id.* at 24.  There were no homes, businesses, or hikers in the area.  *Id.* at 23-24.  In addition, the warrants of removal in his A-File show that he had previously been classified as a noncitizen and removed.  ECF No. 45-1 at 6-11.  This testimony and the A-File together strongly suggest that Tovar-Duran is not a U.S. citizen.

---

[4] Because the Court held that the government failed to properly disclose membership and activity in the "I'm 10-15" Facebook group for Agents Artiles and Hernandez, the Court does not consider their testimony in this analysis.

1   Tovar-Duran contends that the warrants of removal were unreliable because they

2 were not the removal order itself and that they were not sufficiently connected to Tovar-

3 Duran to establish his alienage.  ECF No. 45 at 37-38.  He also argues that "the mere

4 presence of three individuals in a hilly region less than a mile from a designated port of

5 entry does not tend to show 'alienage.'"  *Id.* at 38-39.  But the A-File and manner of entry

6 evidence need not be independently sufficient to show improper entry, *see Valdez-Novoa*,

7 780 F.3d at 923, they just need to be "independent evidence tending to establish the

8 trustworthiness of the admissions."  *Hernandez*, 105 F.3d at 1332.

9   The location in which Tovar-Duran was discovered, that he was in the brush, and

10 that he had previously been removed as a noncitizen, sufficiently corroborate his

11 admission of alienage—they establish the trustworthiness of his admission.  *See*

12 *Gonzalez-Godinez*, 39 F.4th at 1210 (holding that defendant's two confessions of

13 alienage were corroborated by evidence (1) that he was sliding away from the border

14 fence or hiding in a "remote, easy-to-cross area" and (2) that the conditions under which

15 he was discovered matched the details of his confession); *United States v. Navarro-*

16 *Zuniga*, No. 19-MJ-23353, 2023 WL 4491737, at *5 (S.D. Cal. July 12, 2023) (holding

17 that evidence that the "defendant was found hiding by a bush about a mile from the U.S.-

18 Mexico border in a remote area (1) closed to the public and (2) known as a common point

19 for illegal entry" was sufficient corroboration); *United States v. Vera-Rivas*, No. 19-CR-

20 3622, 2023 WL 2390533, at *3 (S.D. Cal. Mar. 7, 2023) (holding that defendant's

21 admissions of alienage "were corroborated by the fact that he was encountered over 8

22 miles from the nearest port of entry in an area known to be utilized by illegal entrants,"

23 was initially hiding in the brush, and had no documents authorizing him to be in the

24 U.S.).

25

26

27

28

19-mj-24405-BLM-GPC

As such, the magistrate judge did not clearly err in finding that Tovar-Duran's admission regarding alienage was corroborated.[5]

CONCLUSION

For the reasons described above, the Court AFFIRMS the magistrate judge's conviction.

**IT IS SO ORDERED.**

Dated:  April 3, 2024

Hon. Gonzalo P. Curiel
United States District Judge

---

[5] Because the Court finds that corpus delicti was satisfied, it does not address the government's alternative argument that corpus delicti does not apply here.  ECF No. 49 at 18.

19-mj-24405-BLM-GPC